# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

IN RE NADER DAHLAN,

    Debtor,

NADER DAHLAN,

    Plaintiff,

v.

UPSTART NETWORK, INC.,
FINWISE BANK,

    Defendants.

Bankruptcy Case Number
22-80273-CRJ-13

Adversary Proceeding No.

## COMPLAINT

The debtor in this bankruptcy case and plaintiff in this adversary proceeding, Nader Dahlan ("Dahlan"), makes the following allegations in his complaint against the Defendants, Upstart Network, Inc. ("Upstart") and FinWise Bank ("FinWise").

### Parties, Jurisdiction, and Nature of Action

1.    Dahlan is the debtor in the above-referenced Chapter 13 bankruptcy case commenced on February 18, 2022. Upstart is a corporation organized and existing under the laws of the state of Delaware. FinWise is a corporation organized and existing under the laws of the state of Utah. At all times material to this complaint, Upstart and FinWise regularly and systematically conducted business in the state of Alabama, and, in particular, within that portion of the state of Alabama lying within this Court's district and division. Dahlan did business with Upstart and FinWise within this district and division, and it is these business transactions that give rise to this litigation.

2.    Upstart is listed as a creditor in the schedules filed by Dahlan.

3.    Despite having both notice and actual knowledge of the commencement of Dahlan's case, as well as constructive notice from the debtor, Upstart, on behalf of themselves and FinWise, drafted a post-petition payment from Dahlan's bank account and contacted him

multiple times by email in an attempt to collect a prepetition debt owed by Dahlan to Upstart and FinWise. The plaintiff asserts that the correspondence was not for informational purposes, but had the sole intention of coercing payment from Dahlan. There being no other reason to contact the debtor regarding an unsecured debt.

4. Dahlan brings this action to recover the actual damages he has sustained as a result of the defendants' willful violations of the automatic stay in this case and to recover punitive damages from the defendants for those violations.

5. This adversary proceeding arises in a case under Title 11 of the United States Code, and it is a core proceeding since it concerns the administration of Dahlan's estate, requests the return of property of the estate, and affects the adjustment of the debtor-creditor relationship between Dahlan and the defendants. Consequently, this is a core proceeding, and this court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (E), and (O), and 28 U.S.C. §1334(b). Courts in the Eleventh Circuit have explained that "any rights arising from a violation of the automatic stay are substantive rights created by the Bankruptcy Code and are thus quintessentially core matters."[1]

Further, Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of the stay provided by this section shall recover actual damages, including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages."[2] In the case of Parker v. Credit Central South, Inc. (In re Parker), 634 Fed. Appx. 770 (11th Circuit 2015), the Eleventh Circuit held that the costs and attorney's fees incurred by a debtor "to halt the violation of the automatic stay and to prosecute his action for damages constitutes an injury."[3]

Additionally, the 11th Circuit in *Mantiply v. Horne* (*In re Horne*), 876 F.3d 1076 (11th Cir. 2017), held that nothing in the text of §362(k)(1) limits the scope of attorney's fees to solely ending the stay violation. Congress made sure to add that §362(k)(1)'s definition of "actual damages" includes costs and attorney's fees. See Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.12[3] (16th Ed. 2014) [hereinafter *Collier*] ("Attorney's fees incurred in prosecuting an action to obtain full relief under the statute, including any entitlement to actual and punitive damages, is as much a part of the debtor's 'actual damages' as those incurred in

---

[1] *See Walker v. Got'cha Towing & Recovery, LLC* (*In re Walker*), 551 B.R. 679, 686 (Bankr. M.D. Ga. 2016)(citing *Banks v. Kam's Auto Sales* (*In re Banks*), 521 B.R. 417, 420 (Bankr. M.D. Ga. 2014)).
[2] 11 U.S.C. § 362(k)(1) [emphasis added].
[3] *Id.* at 773

stopping the stay violation."). Congress did not say those costs and attorney's fees were limited to ending the stay violation, but rather spoke to a full recovery of damages including fees and costs incurred from violating the stay. This explicit, specific, and broad language permits the recovery of attorney's fees incurred in stopping the stay violation, prosecuting a damages action, and defending those judgments on appeal.

## Claim – Violation of the Automatic Stay

6. Dahlan incorporates by reference the allegations in paragraphs one through five of this complaint.

7. Upstart is listed as a creditor in Schedule F of the bankruptcy case filed by Dahlan.

8. As a result of Upstart being listed as a creditor in the schedules filed by Dahlan, the defendants had both notice and actual knowledge of both the commencement of and all the proceedings in Dahlan's bankruptcy case. Financing though Upstart Network is issued by FinWise Bank.

9. Pursuant to §362(a) of the Bankruptcy Code, the commencement of Dahlan's bankruptcy case gave rise to the automatic stay which, among other things, prohibits Upstart and FinWise from attempting to collect from Dahlan any pre-petition obligation owed by Dahlan to Upstart and FinWise.

10. 11 U.S.C. §362(a)(6) states:

> "**(a)**Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> **(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;"

The actions of Upstart and FinWise violate 11 U.S.C. §362 as set forth in this complaint.

11. Despite the imposition of the automatic stay by the commencement of this case, having both notice and actual knowledge of the commencement of this case, and receiving constructive notice from the debtor, Upstart, on behalf of themselves and FinWise, drafted a post-petition payment from Dahlan's bank account and sent multiple emails to Dahlan in an attempt to collect a pre-petition obligation owed by Dahlan to Upstart. Dahlan filed Chapter 13

bankruptcy on February 18, 2022. Upstart draft a payment from Dahlan's bank account in the amount of $32.67 on March 1, 2022. (See Exhibit 1 – Upstart-FinWise Bank Draft). The debtor called Upstart and informed them that he was in bankruptcy and provided his bankruptcy case number. He requested that Upstart return the payment. **As of the filing of this adversary proceeding, the money has not been returned to the debtor.** After receiving constructive notice from the debtor, Upstart, on behalf of themselves and FinWise, sent Dahlan five emails in an attempt to collect a prepetition debt owed by Dahlan to Upstart and FinWise. The emails were sent on 3/2/22, 3/25/22, 4/24/22, 4/27/22, and 5/25/22. (See Exhibit 2 – Upstart-FinWise Emails). The March 2nd email, sent the day after Dahlan provided constructive notice of his bankruptcy case, requested that Upstart discontinues automatically drafting payments, and requested that the money taken post-petition be returned, states: "Thank you for updating your recurring payments for Loan FW2128136. You have promised to send a check or make a manual payment from your account in the amount of $32.67 on a monthly basis." It appears that Upstart feels it is fine to email the debtor demanding that he "make a manual payment" since they stopped the automatic draft. This clearly constitutes an act to collect a prepetition debt in violation of the automatic stay. The emails sent by Upstart to Dahlan on March 25th, April 24th, and May 25th all state, among other things: "Your Upstart loan payment for FW2128136 is coming up. You have $32.67 due. You will need to log into your account and manually transfer payment from your bank account." The April 27th email from Upstart to Dahlan adds additional fees to their demand for payment and additional threatening language in the defendant's further attempt to coerce the debtor into making a payment. It states: "Payment for you Upstart Loan FW2128136 has not been received. Your current past due balance is $47.67, which includes all amounts currently owed inclusive of principal, interest, and fees (if applicable). We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report. **Your loan account status is scheduled to be reported to a national credit agency on May 1, 2022**." The notices sent to Upstart by the Bankruptcy Noticing Center on 2/23/22 and 3/9/22 were returned as undeliverable. Thus, the defendants only had constructive notice at that time. However, the Bankruptcy Noticing Center sent electronic notice to Upstart on May 3, 2022 (See Exhibit 3 – BNC Certificate of Notice 5-5-22). Therefore, the email sent by Upstart to Dahlan on May 25, 2022 was after the received constructive notice from the debtor and actual notice from the Bankruptcy Noticing Center. Further, the defendants still

did **not** return the money they drafted from Dahlan's bank account post-petition after receiving electronic notice of his bankruptcy case from the Bankruptcy Noticing Center.

The Plaintiff asserts that the emails were not for informational purposes, but were intended to coerce payment from Dahlan. There being no valid informational purpose to contact the debtor regarding an unsecured debt listed in his bankruptcy case.

12. Dahlan has sustained injury and damage as a result of the defendants' violations of the automatic stay.

13. The defendants' actions evince contempt and distain for this court, the orders it issues, and the protection afforded by Title 11 of the United States Code.

14. Under 11 U.S.C. §362(k)(1), Dahlan is entitled to an award of compensatory damages, including costs and attorney's fees, and punitive damages against Upstart and FinWise for their willful, intentional, and continuing violations of the automatic stay. The post-petition bank draft and collection emails, after receiving electronic notice of Dahlan's bankruptcy from the Bankruptcy Noticing Center and constructive notice from the debtor, strongly indicates that Upstart and FinWise do not have proper policies and procedures to avoid violating the automatic stay.

15. Dahlan was emotionally distressed as a direct and proximate result of the defendants' behavior.

**WHEREFORE**, Dahlan asks this court to enter an order:
(A) Awarding Dahlan compensatory damages against Upstart and FinWise including the reasonable attorney's fees and costs incurred by Dahlan in the preparation and prosecution of this adversary proceeding;
(B) Awarding Dahlan punitive damages against Upstart and FinWise for their willful, intentional, and continuing violations of the automatic stay, such damages being intended to instill in Upstart, FinWise, and other creditors due respect for this court and its orders and to deter them from taking similar action against Dahlan and similarly situated debtors in the future;
(C) Voiding the debt owed to Upstart and FinWise by Dahlan; and
(D) Granting Dahlan any additional or different relief this court deems appropriate.

Dated: 6/2/2022                              Respectfully submitted,

                                             /s/ *John C. Larsen*_____
                                             John C. Larsen
                                             Attorney for the debtor/plaintiff,
                                             Nader Dahlan

OF COUNSEL:
LARSEN LAW P.C.
1733 Winchester Road
Huntsville, Alabama 35811
(256) 859-3008
john@jlarsenlaw.com